Case No. 22-5234. Jaskirat Singh et al. Avalanche, Sudhir Singh v. David H. Berger in his official capacity as the Commandant of the Marine Corps et al. Mr. Baxter for the Avalanche, Mr. Springer for the Avalanche. Good morning. Mr. Baxter, on behalf of the plaintiffs, Jaskirat Singh, Malal Singh, Shahal, and Akash Singh. May it please the Court. Your Honors, heightened or not, under the legal standard issued in this case, plaintiffs are entitled to a preliminary injunction. Just last week, for the fourth time this year, the Marine Corps again relaxed its screening standards in the name of diversity and inclusion. My clients are still left being told they are not welcome to serve unless they are willing to get out there and use the standards they have kept since their birth. And how are we to review this case under the heightened standard? There are several circuits that have gone with that, but I don't know that there has been much clarity on what the actual test is with respect to the standard. Thank you, Your Honor. This Court has rejected a heightened standard. Other courts in circumstances where there is a mandatory injunction or disruption to status quo, or where all of the relief is being granted at the preliminary injunction stage, have called for a heightened standard. This Court in the Illumined Voters, for example, rejected that premise and would not get into the business of deciding which mandatory or prohibitory because there is always a way to re-describe mandatory injunctions as prohibitory. But under the heightened standard, doesn't it also look to whether or not there is going to be a full granting on the merits of the case? Because we are talking about just the basic training period of time for which if we grant that, there is no way to undo that. And that is another reason why courts have done that. This Court has not done that. There are numerous cases involving prior restraints on speech, election procedure cases, even administrative cases. Or, for example, in the Soterra case where the FDA was trying to stop adulterated e-cigarettes from coming to the country. And this Court said on a preliminary injunction that the FDA did not have the authority to do that and allow all of those cigarettes to come in a way that can never be recovered. Even if the heightened standard applies. It can be stopped going forward. They don't have to continue to allow it. The difference here is injunctive relief, preliminary injunctive relief, would be irreversible in that they will have entered and in all likelihood completed basic training before the District Court can resolve the case on the merits. And they will have even gone into further development of their careers within the Marines. And that can't be undone if the Court gets it wrong at this preliminary stage. There's three reasons you're on our minds. I don't think it's applicable here. The first is that plaintiff, Cass James, already indicated that he's now decided he will not undo his recruit training until at least next summer. So at least one plaintiff will still have the case before then, before this Court. That doesn't help your claim for emergency relief. The other clients do have an emergency situation where they're waiting now and they need immediate relief. But also know that in the KKK versus DC case, this Court held that, for example, in the prior restraint case where a preliminary injunction moved the case, that the case could still be reviewed because it was capable of repetition and they did a review. That case is at 972 F. 3rd 65. And also in the Mahoney versus Babbitt cases, this Court held that even though everything was going to be moved after a prior restraint, preliminary injunction, granting a petition to protest, that there was – that the case would – even though it was becoming moved, the Court went ahead and granted a preliminary injunction. In the follow-up case, the Mahoney versus Babbitt 2 case, the Court refused to vacate and allowed the preliminary injunction to stand. And those cases are 105 F. 3rd 1452 and 113 F. 3rd 219. That was in your brief? I'm sorry? It was in your brief.  The KKK versus DC cases and I believe the Mahoney versus Babbitt cases are as well. So there's – do you do this case all the time? Grants, hate, grants, preliminary injunctions? The speech is one thing, but people entering in careers in the military, in the military, it can't be undone, right? You know, speech can be stopped and not continued going forward. But once they're in and they've completed basic training, which is the foundational claim in your case, it can't be stopped. Your Honor, once the KKK had marched and the violence was anticipated, that cannot be undone either. No, but it doesn't keep going and going and going. In this case, it would need a review again based on the movement factor of people who have their petition to be reviewed or based on – The point is that – that's not my point. The point is that they will be in and will complete basic training, and that will never be undone. It will exist. It will exist as a fact going forward in the future permanently. Your Honor, even in the heightened standard, the heightened standard is just to review all of the factors. That is what the court said in winter. You just have to have a strong showing. All of the cases at the government site, all they say is that you apply all of the standards. You don't get any shortcuts. You look at all of the problems. No, but winter, they could have done – they could have been at the end, after the NEPA review was done, made a final decision, yes or no, to do something. But here, the final decision will be made as to boot camp training. And what is the heightened standard? That's right. So the heightened standard is just look at the standard. Here, all of the problems, all four problems of the preliminary judgment weigh overwhelmingly. But when did they address the heightened standard? I'm sorry, Your Honor? When did winter address the heightened standard? Winter said that that case, even though that case did not expressly apply a heightened standard, it said that even though that involved a preliminary judgment that involved a whole ballgame in the court's language, it just applied to normal standards. It said you have to have a clear showing. It said there was no sliding scale approach. But again, the court doesn't need to decide that here because all four problems weigh overwhelmingly in the plaintiff's favor. And the government hardly disputes that. It continually goes just to this argument of deference. But again, deference to what? The Congress? Congress has already said twice to generously accommodate the religious needs of service members. To the executive? The executive has already said that a diverse military is an important part of our national security interest. There's no conflict here between what our clients are asking and national security. And that's where the district court got this terribly wrong. What worries me is you have discovery ongoing in district court that we haven't seen. And you must have thought, because you have your own mission was in the prior argument, you submitted large amounts of discovery requests to the government, so you must think that further factual development is necessary to the merits of the case. That's correct, Your Honor. We think that the evidence before the court is more than sufficient, and there's always discovery undergoing under the preliminary injunction. And here, the government for two years has had this. The government was required to meet the RFRA standard, the free exercise standard, two years ago, over two years ago, in September 2020, when it first submitted claims of a cash and accommodation. That's when the standard was required to be met. And all that time, they haven't come up with any evidence to show how. I mean, there's at least four gaps in the evidence where they can't show how the exemptions that we're seeking are different from the thousands of secular exemptions that they grant every day. They can't show how these minor exceptions overwhelm the overwhelming representation that takes place. And what happens in the bathroom is a very minuscule portion of what happens in the suave. What happens in the suave is a very small part of what happens in the field. The government has found thousands and thousands of exceptions and said that they don't override this formation of a marine, and yet they claim that our claims can't be them, that they can't show how the other militaries can accommodate. Mr. Baxter, can you speak a little bit to the irreparable harm? Because, so here, even if we assume that you have a strong likelihood of success on the merits, what's the irreparable harm in waiting for the proceedings to play out? Excuse me, Sharon, there are several layers. First, this court has repeatedly held that whenever there is any violation of the constitutional norm, for any amount of time, that is automatically irreparable. This is a little bit different, though, because here the harm is arguably a kind of unconstitutional condition. The plaintiffs here are not prevented from free exercise of their religious beliefs, but they are being prevented from joining the Marines, you know, and maintaining their religious observance. So that is, I mean, what's irreparable about having to wait to join the Marines at a somewhat later? I would point the court to at least four cases, two from this court, Archer v. Pritzker, which is at 740 F. 3rd 176, where the court said that denying someone lobbies, the opportunity to serve in the government advisory board, was irreparable harm. The denial of the opportunity to serve in the government for any amount of time was irreparable. Okay, what case is that? Archer, A-U-T-O-R v. Pritzker, and that's 740 F. 3rd 176. Also, the Karen v. Tome case, the reporter was denied access to the White House reporter pool for unprofessional conduct. He had 12 days left, and this court granted preliminary injunctions saying that the denial of access was an irreparable unconstitutional harm. And there was a lack of notice that your unprofessional conduct could get you kicked out of the reporter pool, arguably a much less egregious harm. The Supreme Court in the Washington case, as far back as 1977 in the Daniel v. Patty case, held that a restriction on someone's ability to serve at the constitutional convention was irreparable harm, even though they could continue being a pastor. And then most recently in the Trinity Lutheran case, a church was being kept out of a tire recycling program, and the court held that that was irreparable harm, because basically conditioning government benefits on religious status is odious to our constitution and should not be tolerated for any length of time. And help me with distinguishing the three appellants, because you've got one who we talked about, the delayed entry program earlier, and that there's a specific statutory deadline there, but then another who is essentially foregoing a career. So are they equal in terms of how we would grant relief? They are equal, because all three of them are suffering the same harm at the same time. And the Epstein incident is perfectly illustrative of what happened here. He was eager and willing right out of high school to join the military. He got told no, and he figured it would take a little while, so he enrolled in community college, and he was ready at any moment to go to Britain. So the irreparable harm comes in the fact of not being able to exercise... simply because of their faith. It took two years to the point before we could even file a motion for implementation to be transferred to a university, and now he's looking at other options. He just found out, or we just found out last week that he could join, for example, next summer the Platoon Leadership Class, which he didn't even know about, because his career had stopped talking to him. So these young men, these are 18 to 20-year-old men who are trying to make their careers, trying to serve their country. The ground is constantly shifting between them. They're trying to make decisions about where to go to school, what to do with their careers. They want to serve in the military. Why? Because they love the ethos of the Marine Corps. They love the warfare ethos. They are six words high in their faith, to be a saint soldier, to fight to preserve the rights of other people, to defend freedom. And yet for the Marine Corps, that's not enough. And that harm is irreparable on multiple levels. It goes on to disrupting their career, their opportunities for advancement, their opportunities for retirement. Isn't it irreparable if they join the Marines, say, six months from now, like in the summer as opposed to in January? Absolutely not. It's that inability to attract them. But they're able to serve. They're able to begin, you know, if the litigation goes in their favor, they're able to begin military careers. It just takes some time as litigation. It makes it worse. They are being told that unlike every other person, you have to wait and make a court decide whether you're worthy to be served, even though you meet every qualification, the Army makes the exact same accommodations for thousands of other people. There's no reason for this to happen. It's really shameful and inexcusable. And I would say the Milne v. D.C. case, another wonderful example, involved vehicle checkpoints, which had happened one time. The D.C. chief of police said that she would not ‑‑ there were no current plans to do it, but it was still an option for future use. But of course, that alone was sufficient constitutional harm because you have a right to drive without being stopped and without reasonable suspicion. Even though there was no checkpoints in place, there was no immediate plans for checkpoints, that harm was immediately sufficient to grant employment and consumption. Does 10 U.S.C. 774 factor into the analysis? Absolutely. You know, that was ‑‑ I mean, Goldman v. Weinberg was the case where the Supreme Court deferred to the military on the exact same issue here, whether a Jew could wear a yarmulke while in uniform. And the Supreme Court said you had to defer to the military and Congress said, no, that's not right. It enacted 10 U.S.C. 774. It said that you can only restrict or discard if the secretary actually passes regulations. If you look at section 15C of 774, you have to do this by regulation. That's not been done. This is someone far down the chain of Paris Islands who is setting standards for Marines. They're inconsistent with what Congress has said. Religious wear wouldn't pass that statute, and the military didn't grant it. BRFRA reinforces that. Okay, so help me balance that. If you grant a religious accommodation, but you then still have the military who is able to put forward reasonable regulations, how do you balance granting an accommodation, but then also later on there's the issue about the military putting forward its own regulations? First of all, the military has already put forth regulations that said subject us to strict scrutiny. Now, if they want down the road for some reason, but I can't imagine what it would be, but they think that they're going to restrict, restrict religious wear for some reason that they've never raised here in the years they've had this issue, well, the secretary can do that. Those regulations could be challenged just like any other set of regulations. But they haven't even bothered to do that. So they're ignoring Congress. They're ignoring the rules. Their own rules say we can hold your appeal for endlessly. I mean, the government admitted that in a brief, that the current appeal has never been resolved. They said we have no deadline on these appeals. Do you want a medical beard? Do you want the doctor? The doctor has authority to grant an unlimited accommodation for an unlimited period of time. It doesn't even have to go to your commander. Do you want a religious beard? You have to spend years waiting for the government to say, we don't have to act on this. What's the precedent that's being set here too? I mean, obviously, these particular individuals are in front of us. The Sikh religion is in front of us. But we've got a MIPI brief talking about other religions that may have similar comparisons in terms of their articles of faith. The test is always a case-by-case basis. Every religious accommodation might be different, and so the court would have to weigh the standard factors for each accommodation. So the only precedent that's being set is a precedent the military already accepts, and that is they are subject to RFRA and the Compounding Government Interest Standard. Now, do we have to go so far as being granular with respect to the particular articles of faith requested here in terms of the bracelet, the turban, the beard? Do we need to make reference to those particular articles? Yes. The military has denied all of those articles of faith. They have not defended any of their denials in this court except for the beard and turban case. They've made no arguments about why they're excluding the kata, the ring, the undergarment. The others will not be shown. There's no argument about their lack of safety or anything like that. And with regard to the beards and turbans, they've already admitted that they grant thousands and thousands of exemptions for other Marines to serve with comparable exemptions, and so that should be made clear. I'm curious because the government doesn't talk about it, but you have a burden on appeal here and for PI as well. What is your argument as to the bracelet, the undergarments, and the dagger, ceremonial dagger? I don't want to characterize it. I haven't seen anything in your brief about that. I don't see anything on this record that suggests that the government is making selective exceptions for bracelets, the underwear, or wearing of daggers or other external religious indicia. And so I'm not sure you have the same argument as to that which you've been making with respect to hair and beards. Your Honor, the argument is the exact same. Our burden is to show a sincere religious belief that that belief is being substantially burdened. The government has already conceded those arguments for purposes of this proceeding. Where's your likelihood of success if you haven't shown? You hinge your likelihood of success as to the beards and the turban or the shaving of hair on the fact that they make other exceptions. Do they make exceptions for external jewelry? Well, it's the government's burden. They do. There are dog tags. Dog tags are different. That's uniform. The regulations allow for personal religious items to be carried. It's a bracelet. Are people allowed to wear external jewelry? Your Honor, it's the government's burden to show that they have a compelling interest to bar that. What is your argument that you're likely to succeed? The argument that we're likely to succeed is that the government has not shown a compelling government interest. It cannot be met in some less restrictive means. The compelling government interest will be the same when they argue here, but they won't have the exception issue that you raise, and that is that there's a vital interest in stripping away indicia of individuality, and that there's a vital interest in commonality, in ritual, in clothing through boot camp. The bracelet would be an exception to that. It would not be consistent with those compelling interests. Sure, it would be the same thing as an exemption for a tattoo. They can have anywhere on your body, including on your face, hands, and neck. External jewelry is different than your body. When the underlying interest is... You haven't argued this in your brief, and I'm not sure what are we supposed to do with that. The burden is not ours. The burden is not ours. You have a burden on appeal to establish error in the district court's decision. You have a burden to establish your entitlement to a preliminary injunction. You can't simply say First Amendment freedoms have been violated here because we were clear, as could be in full gospel, that just asserting a First Amendment violation of free exercise is not enough. So I'm going to ask you again. If I'm under the assumption that you have some burden here, and you haven't briefed the issue, and I know nothing about whether there are similar pattern of exemptions or not, as to the bracelet, the underwear, and the dagger, do you lose on those issues? No, Your Honor, because we have argued that that burden. Our argument is that the government makes exceptions. The underlying interest that is claimed is uniformity.  You could have a bracelet tattoo, and there's no question about that. And they never even argue anything counter that. So the way you look at what they're comparable is where they undermine the interest in the same way, and that the interest is uniformity. Tell me about the dagger. What exception are you – what are they doing there that would be – Well, certainly the military allows service members to carry weapons, and this is a – But this is not – All of these – This is not a government-issued weapon. All of these articles, the other articles of faith, are not visible while our clients are in uniform. They're worn – the comb and the kanga is worn underneath the turban. The bracelet is worn underneath the sleeve. The – Well, it's not worn underneath the sleeve if you're in short sleeves, which people often – And neither would a bracelet tattoo, Your Honor. So the interests are the same. And the district court erred by not even saying that we would win. The district court assumed that we win on all of the standards except harm, and then just adopted out of nowhere. You can't have a ruling that says there's no complying government interest, which is what the judge assumed, and then say that there's national security harm that's so great. Well, how could a national security harm not be? Do all three of your clients – there was some – I'm not totally clear from what limited discussion there was in the briefing. Do all three of them claim desire or need, religious need, to wear the bracelet and dagger and underwear during basic training? Or my understanding was that only one of them had gone through a certain stage in his religious development that that was necessary. So does that apply to all three of them or not? All three of them wear the bracelet, and one of them wears the other articles of faith as well. Which one wears the other articles of faith? Malak Sainjahal wears all five. Akesh and Jaskier wear the bracelet in addition to Akesh and the turban. Mr. Foster, so what is the relationship between your view, your burden to demonstrate you're entitled to a preliminary injunction, and the government's – if the government has forfeited making arguments about any of these other articles of faith, what is the relationship between those two standards? Well, I understand you're correct, Leigh Ann. Again, our burden is to show sincere religious belief and a substantial burden. We've met that. We've alleged that in the complaint. Our clients have stated that in their declarations. And the government has conceded both of those points. It's not arguing those points. The burden then shifts to the government to show a compelling government interest, and it hasn't made any argument about that. And we – About those four articles. I'm sorry? About the other articles. Even about the other visit, they just dropped a footnote just saying that they're at issue. And the same exemptions of the military grants for tattoos, for medical beers, for diverse styles of care, all in the name of increased diversity and inclusion are the same exemptions that undermine their reasoning on the other articles of faith. I'm out of time. So I was asking you earlier about us making specific mention of each article of faith. But then it occurred to me that if this is the Sikh religion to incorporate all of it, can we separate it? Meaning that if we didn't allow the bracelet in, does that then prohibit the Sikh from going into the military because they're not being accommodated on one of the articles? Yes. So for any of them, if the bracelet were not included, they would be barred from entering. For Malak, if any of the others were not, they would be prohibited from entering. These are the religious beliefs that are deeply held in their entire lives. They follow these beliefs, and they can't just give them up. Any more than you can give up a tattoo, this is a part of who they are and their identity. And so we'd ask the court to rule on all of the articles of faith. If there are questions, I'll turn it over to everybody. Thank you. Good morning. Good morning, Your Honors, and may it please the court. Brian Springer on behalf of the federal government. I'd like to start by emphasizing a point that's been discussed in great detail this morning, that this appeal arises in a highly preliminary posture where plaintiffs sought effectively full relief at the outset. While plaintiffs did not carry the burden on any of the preliminary injunction factors, their request for this exceptional remedy must fail because they did not show that they will suffer irreparable harm. But weren't there a couple of factors that weren't really discussed in the district court order? Your Honor, the irreparable harm was discussed in counterbalance to the public interest in national defense here, and the district court concluded that that was, you know, the irreparable harm that plaintiffs were asserting was outweighed by the strong public interest in national defense that would be upset should the district court enter a preliminary injunction that would alter the way that the Marine Corps conducts its training and has conducted its training for many years. And what's your position on, in discussing the factors, which ones are more prevalent? Your Honor, so I think in particular what's important here, particularly because plaintiffs are asking for something that looks like full relief at the end of the day, that the factors that are particularly important are the exigencies here, the equities, and balancing the plain irreparable harm against the strong public interest on the other side is where the focus should be in conducting this analysis. And do you agree with a heightened standard? Your Honor, I do think that a heightened standard applies here. How would that be defined? Your Honor, I think the way that courts have discussed it is they said that this, the formulation is that it's a strong showing on each of the factors. Some of the cases also discuss, as I just mentioned, a particular focus on the exigencies and the idea of giving close scrutiny to the exigencies in a particular case to ensure that equitable relief should issue. Mr. Schwerin, how is this court supposed to parse what is a strong likelihood versus a substantial likelihood? I mean, I've looked at the other circuits that apply a so-called heightened standard, and I'm not really sure how to operationalize those distinctions. So, Your Honor, I think in some ways, you know, some of it may be a little bit semantic, and we don't necessarily need to even get to the merits because the plaintiffs have not made a strong showing on the other factors. But, you know, I think we're doing a predictive judgment in a case like this, and it's just a question of if there are things that, you know, places where maybe further factual development would be helpful, which I think in this case there are many instances in which the ongoing factual discovery in district court is something that would inform the analysis and, you know, essentially… Does the government lose if we don't apply a heightened standard? Are you saying the heightened standard is what makes the difference here, so that they might prevail on the ordinary preliminary injunction standards, but they lose on a heightened standard? No, Your Honor. The plaintiffs lose under any standard because they have not shown that they will suffer irreparable harm if the case proceeds that would outweigh a strong public interest in national defense. We think the case is even easier because this heightened standard applies in this situation, particularly because plaintiffs are both asking for something that looks like full relief on the merits and are asking this court to alter the status quo, not to… So I guess, I mean, I'm interested in this idea that we should apply a different standard. I mean, perhaps the fact that plaintiffs would effectively get full relief means that there are some greater equities on the side of the government, but isn't that…can't that be accommodated in the ordinary preliminary injunction standard? Your Honor, I'm not sure if it entirely can be accommodated because, again, there's not a clear definition as to how to balance the factors under the normal standards. Normal standards take everything as a whole, right? I mean, Winter is very clear about that. Yes, Your Honor. I think Winter is clear that plaintiffs need to show that each of these factors are present in it in order to get this exceptional relief or preliminary injunction, and these things are considered together and weighed against each other, and here the plaintiffs haven't shown that the district court abuses discretion in weighing these factors, in particular in looking at the harm that the plaintiff's claim would result here against the harm that would result to the Marine Corps and the public interest. Well, we apply abuse of discretion in the weighing of the factors, but we have de novo review over any legal conclusions. That's just about the likelihood of success on the merits. Your Honor, it is the case that there's de novo review of legal conclusions. However, things that relate to facts and things that are discretionary, like the weighing of the factors, are reviewed for abuse of discretion and is really what the heartland of what we have here in this particular situation. And you mentioned the need to await development of a fuller record in the district court. What exactly does the government expect to establish in the district court that isn't already in this record? Your Honor, the government expects to elaborate more on some of the rationales that we have in the record. We have Colonel Jeffrey's declaration that summarizes the compelling interests at stake here and how this is the least restrictive means. But we expect that Marine Corps officials will testify either as staff or expert witnesses to explain why recruit training is critical, why the challenge standards are critical to developing this necessary team mindset, and to discuss how in the day-to-day operations of a Marine this team mindset carries with them and is necessary in order to accomplish the Marine Corps' national defense mission. Those are some of the things that are in development and we expect. It's nothing new. It is just more detailed elaboration on the rationales in the Jeffrey declaration? Your Honor, I wouldn't characterize anything as being that it's not like... You don't have new reasons. Correct, Your Honor. The government won't change its reasons. However, we haven't yet had the opportunity to enter evidence into the record because we're still at such a preliminary stage. There's no requirement that the government put in all of the evidence that supports its decision when we're still at a very early... No, but maybe not in court, but I should have thought under the Religious Freedom Restoration Act, if not also the First Amendment, you were obligated to show in your initial... denying the accommodations. Both of that denial is consistent with the demands of the First Amendment in this context. And so, this is an unusual confluence of difficult standards here for both sides that come together in this case. And so, if you didn't make that showing in denying their accommodation, if the Marines hadn't gathered that record at the time they told them initially, no, we will not let you in. Why should you get to wait to develop that in district court? You made your written decision. You made your First Amendment decision. Well, Your Honor, here the government did explain its rationales and explain the compelling interest here in... In the Jeffrey declaration. No, in the original decision by the Deputy Commandant, and then it's elaborated on the interest here in Colonel Jeffrey's declaration. It's pretty skeletal. Your Honor, I... Very skeletal. Your Honor, I would disagree. I think it fills out some of the details here, but also, again, I would just emphasize that this is still a very early stage of the case, and the government needs the opportunity to enter all of the evidence supporting its decision into the record here. Colonel Jeffrey, who is somebody who is... Sorry, this other evidence you're developing in district court was also relied upon in denying them accommodations? Because it's certainly not anything you've discussed here reflected in the decisions. Your Honor, Colonel Jeffrey... No, no, I'm talking about the initial... I'll call it an agency decision, the initial decision by the Marines to deny them. Your Honor, this evidence is expanding on that decision and explaining the things that support that decision. Right, but you were saying we don't have to do that, we don't have to have an elaboration at the preliminary injunction stage, but I'm still asking you why you don't have to have that elaborate explanation, why you don't have to show when you initially... when the Marines initially decided on their own outside court to deny them accommodations that they had considered whether there were other less restrictive means of accommodating their needs, or whether there was truly a compelling interest, given all of the exemptions that were already made, and neither of those are reflected in my reading, and tell me if I'm wrong, of the decisions by the Marines to deny their accommodations. Your Honor, the Deputy Commandant's decisions discuss the compelling interest here and why these are the least restrictive means. There's no requirement that the Deputy Commandant issue some very, very long decision and say that the Deputy Commandant told us exactly what the Marine Corps' compelling interests are here, and in fact... Where did they explain why the same accommodations made by every other branch of the military aren't sufficient here? And I would just add on that it seems like these are goals  in terms of how you're laying out uniformity, commonality, trying not to have particular identities, things of that nature. Your Honor, I wouldn't call these goals. I think that this is... The Marine Corps has explained that this is the baseline that's necessary for everyone to meet, and that these are the standards... But is there anything that the other branches have shown or that the Marines have been able to show that somehow not allowing this, or allowing this rather undermines goals of even the other branches? Your Honor, I think that's something that Colonel Jaffe addressed in his declaration, and it's something that is continuing to be developed in... Tell me what he said there. If it explains what... Are you just referring to the fact that the Marines are an expeditionary force? Is that the explanation you're relying on, or was there something else he said about why they don't make the accommodations that every other branch does? Your Honor, in terms of recruit training, the difference that the Marine Corps has identified is that the Marine Corps is... has this expeditionary service on a service-wide level. I don't get why the service-wide level matters for training each individual, but so they have a... They're an expeditionary force. Your Honor, that's correct. They are an expeditionary force. And why does that mean they can't make the same accommodations as the Navy? Your Honor, the Marine Corps has explained that it is differently situated than these other branches... Because? ...because their folks are the ones who are typically sent out first to respond to military expeditions. Well, the Army has ready for grades. Sure. They have plenty of teams that are in charge of being deployable in 18 hours, wheels up in 18 hours. The Army has that, correct? Your Honor, the critical distinction, that's correct. Okay. But the critical distinction is that the Army has these small teams that are capable of doing that, whereas here... Teams can be filled with anybody who comes through boot camp. Anyone who goes through boot camp could qualify for one of those teams. Your Honor, so many of these teams... In fact, some of them, it's rotating. You're not constantly on that team. It rotates through members of Army members. At any time, they could be part of that team. Your Honor, I'm not sure that I know the specifics of these Army teams, and that's also something that... That seems like that would have been an important thing for the Marines to have thought about before insisting the fact that they may have to deploy quickly makes a difference because surely the Marines are aware. The Marines must be aware that other branches of the military have rapid deployment forces as well. Your Honor, I think the important thing to return to is that what the standard is here under Holt v. Hobbs is that the Marine Corps is explaining why it believes that... No, part of its least restrictive means and undergirding its assertion of a compelling interest has to be coming to grips with the reality. As Holt talked about, other prisons made accommodations, and that was important to have been thought about in the RFRA analysis. And the same thing here. When the Marines go off on their expeditions, how do they get there? Who takes them? The Navy, which makes accommodations. How come the Marine Corps doesn't have to grapple with this? I was going to say particularly as to the Sikh religion too, not just... Exactly. Thank you. Your Honor, again...  One of the ways they conduct their expeditionary assignments is by being forward deployed on Navy ships, which could be filled with members of the Sikh religion, dutifully serving their nation and following their faith at the same time. I fail to understand how the Marine Corps wasn't responsible for addressing, certainly at the administrative stage, but at a minimum in the JEPI declaration, what they mean when they say we're an expeditionary force that somehow means they have to train differently. Your Honor, Colonel JEPI did address this, and I think one important thing here as well is that we anticipate... He did address this. Other than that sort of blank statement, I'm sorry, it's not your statement, but you're defending it here. The statement is that all he said is we're an expeditionary force, and that doesn't hold water. If you pause for a minute and say, what does that mean? Do the other branches that make accommodations have to sometimes deploy rapidly? Do the other branches that make accommodations get Marines where they need to go on this fast expeditionary basis? Those just seem to me sort of elemental matters that would have to be considered to make that statement. Your Honor, I think Colonel JEPI was also... I mean, even if he didn't directly cite to these things, he had in his mind some of the documents and manuals and other things that explain in more detail what it means for the Marine Corps to have this expeditionary mindset. I would also just note that we anticipate there will be testimony entered into the record about... An expeditionary mindset means what? Your Honor, I think generally the way that it has been described is that Marines, every Marine must be in general ready to deploy at a moment's notice. Including their officers. Yes, Your Honor. Go through the Naval Academy. Your Honor, they go through the Naval Academy, but after they come out of the Naval Academy, they also go through the basic school where they learn. But you didn't say in your brief that they then, having been accommodated in their religious exercise through the Naval Academy, that they are stripped of that in their schooling? Your Honor, I think it's a different comparison because the Naval Academy is a four-year program. It's also followed by a six-month program. They must be able to get that, yes. But they must somehow be able to get that Marine Corps mindset without being stripped of their faith. And the Deputy Declaration says, and the Marine Corps manual, it's like all members of the Marine Corps must have this expeditionary mindset, including those officers whose faith has been accommodated. Your Honor, I think it's right to say that all general Marines need to have that expeditionary mindset. Of course, officers serve in a different role because they're the leaders who are giving the orders rather than the ones who are calling the orders. Okay, so is the Marine Corps of the view that officers' religion can be accommodated, including Sikh officers' religion can be accommodated? So now we're only talking about the boot camp recruits. Enlisted individuals cannot be accommodated. Is that the line that has been drawn here? Just so I understand, but it's been a little confusing. Your Honor, I don't think that's the line that's been drawn here. Of course, here we're talking about the recruit training. The Marine Corps has explained that officers who go through Officer Candidate School are subject to similar standards at the beginning of their Officer Candidate School candidacy and that they will undergo the information. This may just be my misunderstanding. So we have a Sikh individual who has been accepted and gone through four years of the Naval Academy, incredibly rigorous, especially that first summer, incredibly rigorous training, and has been accommodated the full time and has chosen the Marines and has presumably worked with the Marines over the summers beforehand, presumably still being accommodated. Tell me if I'm wrong. And then goes off to, I think you call it the Basic School. And I didn't hear you say that all those accommodations fall away at the Basic School. Am I incorrect about that? Your Honor, I don't know the specifics of the Basic School, but I believe that accommodations can sometimes be granted at the Basic School. Okay. You're not aware that they're stripped away, haven't been granted for four years, including summers working with the Marines? Not aware of that, Your Honor. So even if we were to grant this idea that the Marines have this special expeditionary purpose, which I certainly understand, I mean, the government still has to explain under the Supreme Court's precedence why its grooming policy is a compelling interest with respect to these particular plaintiffs. And that's where, I mean, even if they have this general interest in uniformity and being an expeditionary force, they have to show why there's a compelling interest in imposing that requirement on these plaintiffs, especially when there are so many exemptions for other grooming standards for other reasons. So where has the government met that burden? Your Honor, I think there's a couple places where the government has met that burden. I think one thing that Colonel Jaffee's declaration explains is that by granting, by allowing plaintiffs to go through the process without having to comply with these uniform and grooming policies, it could affect the necessary transformation of everybody else in that. Even assuming that's a general interest that the Marines have, how can that be a compelling interest given all of the other tens of thousands of people who are given grooming exemptions? I mean, it's just, you know, you can say the general interest, but if there are so many exemptions, why can't an accommodation be made for these plaintiffs? Your Honor, I think the exemptions in particular represent a different circumstance than what plaintiffs are asking the accommodation that plaintiffs are asking for here. For example, with respect to medical beards, people who are granted this waiver, first of all, have to shave when they show up at recruit training. They're not allowed to start recruit training without shaving. If the skin condition presents during the recruit training, then they're granted a temporary no-shave waiver, so they have to continue to shave as much as possible and possibly all the way down. So what does the government... I mean, the government relies very heavily on military expertise, right? So what is the expert reason why medical beards do not undermine the government's interests, but a religious beard worn by an observant Sikh would undermine its interests? So, Your Honor... I just don't see anything. I just don't see any argument that the government has made with respect to this. Your Honor, I think part of what the difference is here is what I just explained, that the medical situation is obviously a medical treatment, a set of steps in order to address a medical condition, and it still requires the recruits who are granted this temporary waiver to do as much shaving as they can, whereas the plaintiffs here are asking for the ability... That's consistent with that medical condition, right? But for Sikhs, their faith requires them not to shave at all. Why is that something that cannot be accommodated in light of the government's interests? Your Honor, again, I think the difference is that this is one piece among many of ways in which the Marine Corps is ensuring that each of these recruits is stripped of their individuality, and that... So for secular medical reasons, you're allowed to, you know, stand out or have a beard, but not for religious reasons. I mean, isn't that different treatment between secular and religious reasons directly contrary to the Supreme Court's decisions in this area? Your Honor, I don't think it is, because, again, what is being required of the folks who receive a medical waiver, which, again, is happening during the recruit training, they're required to shave when they arrive, is that they are still required to, every day, use slippers or chemicals to shave their beard as much as possible so they don't have the same, you know, set of choices of what they're able to do. Do you think the government's interest in uniformity turns on what specifically people are doing to groom themselves in the morning? Your Honor, I don't think it's just a question of exactly what people are doing in terms of grooming. It's the idea of restricting the choices and stripping people of their individuality to ensure that they will comply with orders unquestioningly, and that that's advanced by the folks who have to use slippers and use chemicals to shave rather than use a razor. Well, I can't... So, first of all, the chemicals aren't used until the beard has grown in, correct? Aren't used until what, Your Honor? The beard has grown in to some extent. I believe that's true, Your Honor. So if they can't shave, they commonly, I think, on this record, go without shaving from 4 to 8 weeks. Boot camp is only 15 weeks. Your Honor, my understanding is that, in general, they are shaving during that time using clippers instead of using chemicals, and there's sort of a... Well, there's some... It depends on... I mean, this record has a whole stages of mild, moderate, severe cases and some things that aren't responsive. Some people may have adverse responses to clipping as well, and it has to be a certain length before you can clip it, doesn't it? Otherwise, you're just going to be doing the same thing as shaving. Your Honor, it is correct that there are these stages and that you're attempting to address the problem sort of depending on how severe the condition is and shaving as much as possible, which may not always require shaving. Right, and so your point is that they still... Orders from on high have said get as much of that facial hair off your face as you can, and that's part of the training and the obligation to not make your own choices about that but to follow these orders. But they can be... The order can be executed in different ways. Shaving if you can shave, clipping if you can clip, chemicals if you can use chemicals. Is that my understanding? Your Honor, it is the case that everybody is... You know, there may be these slight variations for the case where somebody has this medical waiver. Again, this is part of an overall program about stripping recruits of their individuality. Why wouldn't adding a line to that program that said if religious obligations forbid cutting your beard, it must be tied? It must be tied and tucked out of view to the extent possible in a certain military-regulated manner? Your Honor, the Marine Corps has explained that that isn't sufficient. Because? The Marine Corps has explained that everybody needs to be carrying out basically the same set of activities. They're not carrying out the same activities. Some are shaving. Some are not shaving and not clipping because they have to wait for a certain amount of length before you can clip without causing the same irritation. It has to be a certain length before you can apply the medical creams to it. So some are shaving, some aren't. Some are shaving, some aren't. Some are applying a cream. Some are applying clippers. I'm just asking where they have said, and that's all allowed. Marines, in fact, that is all consistent with developing the mindset that we require at boot camp, which is an important interest, no doubt, for the Marines. But what I haven't heard them say is since we're already doing it, we already have three or four different options here. Why, what is the rationale, the evidence, that adding a sentence that said, or neatly and tightly tying a beard and tucking it up out of view is not another option? You don't have a choice about that. You don't get to wear your beard down. You don't get to decide whether you're going to braid it, roll it, tuck it. We're going to tell you how it's going to be tied. We, the Marines, are going to make that decision for you because you don't get to make individual choices about your beard anymore beyond the decision of having it. Where have they said, we can have three or four options, but we can't have that one, too? So they're not all doing the same thing. I would point you to Colonel Jeffy's declaration. I think the Marine Corps has explained that this is the level of sacrifice that is needed. To the extent that there are closed questions here, of course, the record is... The level of sacrifice is surrendering individual control over the need to reduce the display of facial hair to the extent possible, reasonably possible. Yeah. And all the other branches say that consistent with that is tying and rolling up beards. But I didn't see anything in the Jeffy declaration that said that if we add that additional option to our list of existing options, the national security will suffer, as the district court found. And I'm just having trouble making that leap given that the national security hasn't suffered for any other branch of the military. Your Honor, Colonel Jeffy and the policies themselves have said that these standards in particular are meant to serve this national defense and national security interest and that this is the necessary level of... Where have they said they can't add this additional option? What is the connection? I'm just... My mind cannot quite understand how the rigors of this very difficult and challenging 13-week boot camp. It's incredibly rigorous and demanding. And all day, every day, they are taught not to think about themselves but to think about their colleagues, about their nation, about sacrifice. 24 hours a day, that's what's going on. But if we let the Sikh sit next to the person who can't shave that day and can't yet apply chemicals or a clipper and roll and tie up the beard into the very neat appearance that the other branches have accomplished, suddenly the wheels come off and everything else that happens for 13 weeks, 24 hours a day, seven days a week out of those 13 weeks stops working or is even diminished. So, Your Honor, the Marine Corps in particular is the expert in running its training and the consequences... And it needs to show us that expertise. I think that's what Judge Brown was asking about where have they shown us that military... Maybe another way to think about this too is we've focused on whether there's a compelling government interest, but the government also has to show it's the least restrictive means, which is an exceptionally demanding standard, as the Supreme Court has said. So, I mean, with all of the exemptions in place, how can the government make out that it's the least restrictive means? I mean, even if we assume that there's some compelling governmental interest, which is also undermined by the exemptions. But, you know, putting that to one side, what about least restrictive means? Your Honor, the government has explained... The Marine Corps has explained that this is necessary to affect the psychological transformation. I mean, one thing I would point you to is the fact that... But how can it be the least restrictive means when there are other widespread exemptions? So, we know that the Marines know how to give exemptions. Why not an exemption for observant seats? Your Honor, the exemptions that the plaintiffs are pointing to present different circumstances than what plaintiffs are asking for, and therefore don't show that the government could specifically give... They are different on the margins. They are different on the margins. They are exemptions from uniformity requirements and from uniform grooming requirements. You know, there may be a little bit... You know, there may be a question of degree, but we know that the Marines gives exemptions from uniformity requirements for grooming. Lots of exemptions, not just a few. Your Honor, I guess I wouldn't characterize it as just being a question of uniformity. It's also a question of the sacrifice and giving something up to, you know, to strip these recruits of their individuality and put the needs of the team above their own. This is a carefully curated... So, the Marines believe that it's important for observant seats to give up their religious practice in order to be a member of the Marines. Your Honor, this is a rule that applies across the board. This is a set of uniform standards that applies across the board. It doesn't apply across the board because there are medical exemptions and other kinds of exemptions. But again, Your Honor, those exemptions are not things that undermine the government's interest in the same way because, as the Marine Corps has explained, those present different circumstances that don't look like what the plaintiffs are requesting for their particular accommodation. The tattooed people don't have to take off their tattoos, right? Your Honor, that's correct, but again, tattoos, this isn't a question of just making the recruits appear identical. This is a question about having recruits go through the same process and give something up for the common endeavor. Tattoos exhibit individuals, correct, in the purpose of the tattoo, that you think your choice is? Your Honor, I don't think that's right because the Marine Corps, in particular, restricts the type of tattoos that if you have a visible tattoo, for example, outside your clothes, that that is restricted under the normal course of tattooing. And what about women who have facial hair, you know, that they can't help that, that it's hormonally part of their body? Your Honor, that's not something that I know the details of, how it plays out in practice. It's not something that the plaintiffs have raised here. But again, we're just showing you that there's accommodations made throughout, exemptions made throughout. Your Honor, I guess what I would say is that I think the important thing is that diversity is not inconsistent with what the Marine Corps is doing here. Of course, the Marine Corps supports diversity and recognizes the importance in the pursuit of diversity. However, what these standards are meant to accomplish and why they're consistent is the idea of recruits giving something up in order to become part of a team and put the needs of the team above their own. Okay, and then I wanted to share your opinion about the... Earlier, I was asking the appellant's counsel about the various articles of faith, and we talked about bracelet, undergarment, and whether or not you all are having any objection that it's almost an all-or-nothing, that if the Sikhs can't have all of their articles of faith, then you eliminate one, you're essentially still eliminating from this practice or going into the Marines. So, Your Honor, I think it's correct that it's the plaintiff's... to show that each of these particular religious items were necessary for them and that the government, or the Marine Corps in particular, may have been denying them. I mean, maybe not as prevalent in their arguments, but it has been mentioned throughout, you know, the various brief filings, even somewhat in a footnote, and the government hasn't really responded to that individually.  Your Honor, I don't think we forfeited the argument because the Marine Corps' decision that's under review specifically talks about all of these articles of faith and denies the request as to all of these articles of faith, so it's incumbent on plaintiffs in their presentation and district court and then on appeal if they thought that was a necessary part of this to clarify that that's part of the scope of the relief that they're seeking and that the government didn't meet its burden on, you know, those pieces because, again, the government is explaining what its compelling interests are here and how this is the least restrictive means of accomplishing those interests as to the beers and the other articles of faith. What would you be concerned about if we granted relief to the appellant in terms of any precedent? Again, referring to the other amici brief with other religions. So, Your Honor, I think in general these cases are, you know, are supposed to be kind of analyzed on a very specific level as to a particular plaintiff and a particular interest at stake, and so in general I think it's important that, you know, this is specific to the specifics of the evidence that we have currently and as I mentioned before, I mean, I think what this goes back to is just the idea that there's further factual development that needs to occur here and that because the plaintiffs haven't shown any kind of exigency or any kind of strong equity to outweigh the public interest in national defense that a preliminary injunction shouldn't issue at this time. Let me ask them a couple questions. One, does the Marine Corps accommodate dietary restrictions at boot camp? Your Honor, I don't know the specifics. My understanding in general is that the food that is provided generally accommodates people's dietary restrictions. So that's not something that's needed to be stripped away, that everyone will eat the exact same food. Your Honor, this is something that hasn't been a focus of briefing and plaintiffs raised it in their reply, but that's my understanding of how it works. And of course, the recruits are still all eating together at the same time in the mess hall. Yes, very fast. And now, male and female recruits are training together. The statutory obligation was forward-looking, but the Marines have already graduated classes of, at least one class, and I think maybe more, of men and women who have trained together. Platoons, can you tell me what, it sounds like they probably have separate barracks, but for sort of the eating and the classrooms and the physical activities, those are all done together during the day? So, Your Honor, the men and women are in separate platoons or the platoons are not integrated. At the company-wide level, there is some integration. My understanding of how that plays out in general is that the trainings are almost completely separate. They do sometimes sit in the classroom together, but the women sit with their platoon and the men sit with their platoon. And they may be sort of in the same place at the same time, but much of the training is sort of happening separately. And specifically, the grooming that we're talking about here happens separately because the women live, or are required by statute, to live in separate barracks from the men. And is that separation consistent with what's going to be required by the National Defense Authorization Act that requires integration? All right, 23 or 24? Is that in 2024, or is that going to have to require more integration than you have now? Your Honor, I believe that the issue is under consideration. I believe that the Marine Corps, that this fulfills the Marine Corps' obligation. My understanding is that there's ongoing study happening as to how, what level to integrate at and how to run this training. And I just had one more question because I noticed that Colonel Jeffries said in your brief said that this grooming policy has been the policy for decades. But the Marines have been around since 1775. So when exactly did this grooming policy start? And what was the grooming policy from 1775 until this one, generally, with respect to beards and hair? Your Honor, I don't know the specifics of the history. And my understanding is that may be something that will be developed in discovery as things move forward. All I know is what Colonel Jeffries says in his declaration that the current standards, at least in this material form, have been around for decades. And so RFRA, you can meet the RFRA and the strict scrutiny standard on the First Amendment without even showing that this has been required to be a Marine, could be for 100 to 200 years. 150, 175 years of the Marines did not have such a grooming policy. That may be... Presumably, right? They did something to this change. Presumably, when you adopt a grooming policy, it's a change. We just don't know that this has been required. In fact, we seem to know that this has not been. At least some elements of this have not been a required grooming policy. They haven't been part of what it takes to be a Marine. To be a Marine recruit even in boot camp. So the history of the Marine Corps is just a more modern requirement as far as this record shows. Your Honor, this may in part be based on sort of the shifting role of the Marine Corps in the military. I'm not sure that... You know, I believe that there have been some changes. Again, I'm not an expert in this, and I believe that we expect there to be some testimony put into the record about the Marine Corps' unique role in the military, both currently and historically. How is it differently currently than it was historically? Other than, obviously, technologies have changed dramatically. Were they not an expeditionary force from the beginning? Your Honor, I believe they were. I don't know the specifics of how things have changed over the years, and that's something that it's my understanding is developing in district work. The rationale here was about being an expeditionary force, and as far as you know, that's what they've been since the beginning. Your Honor, that's correct that the difference between the Marine Corps and some of the other branches is the expeditionary nature of the entire service as opposed to select groups within the service. Okay. Your Honor, if there are no further questions, we will ask that this is over. Thank you. Okay. Mr. Baxter, we'll give you three minutes. And I have one very quick back question for you. You had said when you submitted your updated declarations to this court that they would be filed in the district court within a couple weeks. You submitted... I believe they have been, Your Honor. I have to double-check and that will file them immediately. Okay. Sorry. Go ahead. Thank you, Your Honor. I would just make three points. First, my friend on the other side says that they just need a little more time to elaborate. They've had over two years to elaborate all of the reasons, and they have failed to get any kind of justification. I would point the court to the golden Gordon v. Holder case, 632F3722, where this court in a very similar situation with the district court gave a cursory ruling on the fourth crime and provided no reason to the question that it's insufficient and it's an abuse of discretion and legal error and led to reversal. Here, the court couldn't get any reasons because the Marine Corps didn't give them any reasons to expand upon. This is the long history of beards in all of the other branches and militaries around the world in the Marine Corps itself, and they can't provide any reason. Do you know about this historical question I was asking? It just struck me as odd when it says it's been the policy for decades even though they've been around a long time. We've been unable to find any history from the Marine Corps specifically. We know that for all the other branches in 1981, the Marine Corps tightened up all the branches and tightened up their regulations. Prior to that, there was a long history all the way back to World War I and 6th Army honorably in the military. Is that where any of those in the Marine Corps that you're talking about? We don't have historical evidence of that, Your Honor. The least restrictive means test has not been met here, and a narrow ruling for this court is to hold it on the facts. In this case, the government has not met the least restrictive means test. I think that we've met the burden on the other articles of faith, but I'd like to just point to a couple of other legal sources in the appendix at appendix 275. Exhibit V to the complaint section 1004 allows exceptions for POW and then wedding bracelets. We know that wedding rings and watches are allowed at least in portions of recruit training. Section 3036 addresses undergarments. There's nothing inconsistent with Kachara. MC Depot order 1513.6 G that's 15 MC Depot order 1513.6 G section 2003 subsection 2 I think it's 2-7 and 2-8 says that Marine recruits may keep religious articles of faith. You can work off, but you can't keep it for fun. And then finally, Your Honors, I would just point to the issue of harm. So what you just cited to me, is that in the record? Your Honor, I believe it's in the appendix. I don't have the appendix cited on this. It's also legal. The Marine Corps is on legal authority. The District Court, Your Honor, if this were about race, there would be no question about saying that there's harm if you're told, oh, you can go join the Army and do that. That's what the District Court told our clients. Why don't they just go join the Army? Why don't they just give up their religion for 13 weeks? We have proof of, in this courtroom, Chaplain Goldstein, 37 years in expeditionary forces to Iraq and Iran. Major Lieutenant Colonel Kamal Qasi served with his beard and turban in Afghanistan. A bronze medal star award recipient. Recently died of internal cancer because of exposure to burn pits in Afghanistan. Excuse me, Major General Qasi, at 18, comes here as an asylee. Never thinks about the opportunity to serve his country. Goes to a reception day to shave or go home. So how does he choose between his religion and his family? He was a religious guy who served in a religious value to maintain his hair for 10 years. Kept his braid in a ziplock bag so he would remember that he would never again abandon his religious beliefs. Later, allowed to wear his turban, teaches at West Point, just where the first two Sikhs to graduate from West Point with their beards and turban on. These guys are not able to serve in the ring court. This is embarrassing and we ask this court to enter a preliminary injunction. Thank you. Thank you, the case is submitted.
judges: Millett, Rao, Childs